And if you will just give us one second here. All right. Mr. Carpinello? Yes, Your Honor. Thank you. Okay, whenever you're ready. George Carpinello with my co-counsel, Catherine Zhang, representing the relator in this case. Your Honors, the district court made a fundamental error by concluding that the relator's own complaint was a public disclosure that barred him from bringing a second action unless he was an original source. Obviously, the intent of the public disclosure provision, which this Court and many other courts have enunciated, is to prohibit parasitic lawsuits in the False Claims Act arena of inhibiting relators from coming into court who simply learned about the underlying information from a public disclosure. In this case, the district court judge said that the relator's own complaint, which he had filed based upon his own investigation, was in fact a public disclosure that barred himself from bringing the second action. I think, I mean, a lot of what I read in your brief is discussing sort of the policy wisdom of interpreting things in certain ways, but the language about the public disclosure bar is pretty explicit, and it doesn't create an exception for the position that your client is in. There are a lot of aspects of the False Claims Act that aren't laid out by Congress, and my adversary suggests that Congress should have written into the statute what happens when you have an interaction between the first filed rule and the public disclosure rule. There are a lot of provisions that these courts have applied to the False Claims Act that are not in the statute. For example, the Supreme Court held in Kellogg that once a first filed action is dismissed, a second relator can begin the case. That's not in the statute. This Court held in Woods. But that doesn't relate to the public disclosure bar, does it? I mean, they didn't address that in either Kellogg or in Wood. I guess Wood too. But it's only because of the interaction between the public disclosure rule and the first filed rule that we have this situation. And one could not anticipate Congress – there's all kinds of interactions that Congress does not anticipate that they put into the statute. In Woods, this Court said if the first filed case is dismissed, a second relator can then proceed with their case, but they have to file with a new. That's not in the statute. That's an obvious logical decision being made by the interactions of the various provisions. Isn't the first file that the Omni-One case was dismissed because of the – it wasn't the first case to be filed. The Underwood case was. And so even assuming there was an exception, as you suggest, to public disclosure, how is your client the original source? Well, he – first of all, Your Honor, the first filed case, the Underwood case, was not public when our client filed the case. No, I understand the two-year gap, but I'm asking. Yeah, there was no – when our client filed, there was no public disclosure. And the Underwood case became unsealed in 2016. We were not aware of the case. Our case became unsealed in 2018. So we argue that we don't need to be an original source because we're not barred by our own public disclosure. That doesn't make any sense at all to have a relator being barred by their own disclosure. But the – with regard to original source, we claim that, yes, we are – you will need to get original source if you conclude that the – my client's own disclosure was a barring public disclosure, which we think makes no sense at all. But why is the Underwood filing not a relevant public disclosure? Because the Underwood filing was made – the Underwood disclosure was made in 2016 after we had already filed. And our position is – But then that case was dismissed, and now you filed a new action. Right. And under Beauchamp, we argue that the – when we filed our case in 2012, we were – there was no disclosure of the Underwood allegations. And we're saying that we – merely by refiling, we have to refile. We refile in 2019 because we're dismissed because there was an unknown first-filed case. So we're saying that in examining whether there's – whether Underwood is an intervening public disclosure, you should look at what we did in 2012. When we filed in 2012, there was no public disclosure. And we only refiled in 2019 because we had to, because of this Court's decision in Wood. The Supreme Court said in Kellogg, once the first-filed case is gone, the second relator can file. And this Court in Wood said, but you have to file again. So the reason we have two – But this isn't the second relator. It's – you kind of want to have it both ways. What you're saying is if the Omni-One is dismissed because it wasn't the first file, whether your client was aware of it or not, when they filed in, you know, 2000 – when it would – they filed in 2012, right, and Underwood was publicly released in 2016 or something like that or 2018, two years later. But the point is when your client's case, Omni-One, was dismissed because it wasn't the first file, that doesn't mean you get to try again three, four times to say, well, I'll redo it because now I'll be the first to file. Does it? Actually, actually, Wood exactly says that. What Wood says – what this Court's decision in Wood was, if the first-filed case is dismissed, Underwood was dismissed in 2016. If the first-filed case is dismissed, another relator may then proceed with their case. So we were free to proceed with our 2012 case once Underwood case was dismissed. That's what Wood says. That's what Kellogg says. Kellogg says if there's a case pending when you file, then your case must be dismissed. When Omni-One was dismissed, you're trying to say, well, I get to refile, and you look at Omni-One, not Omni-Two, whether there's public disclosure. Right, because – That would upend the public disclosure, wouldn't it? No. Because then somebody would say, well, you know, I know it was publicly disclosed, but I kind of knew about it. No, because – So now I get to – No, because our complaint was on file before the public disclosure. The Underwood disclosure occurred in 2016. We filed our complaint with all our allegations in 2012. There was no public – Omni-One. I'm not talking about Omni-One. I'm talking about Omni-Two. I mean, your whole case is you want us to look at Omni-One as when deciding whether there was public disclosure. I see that my time has expired. May I answer your question? Yes. No, we're saying yes. In determining whether we're barred by public disclosure, you look at the question of when we filed our original case, was there any public disclosure? There was none. In the intervening period of time, we have to refile again only because – I guess that's the question. Which is the original case, Omni-Two or Omni-One? Well, for this purpose – For purposes of public disclosure. I would urge you to follow Beauchamp because Beauchamp – this is almost identical to Beauchamp. In Beauchamp, the plaintiff filed their complaint, and they – during the – after they filed their original complaint, there was an intervening public disclosure, and they amended their complaint. And the court said, you're not barred by the intervening public disclosure because you filed your case before the public disclosure. You were not affected by any public disclosure. You can't be parasitic if there was no disclosure when you filed your case. So for purposes of barring for public disclosure, it is the first case because when we filed our case, there was no public disclosure. The only reason we had to file a second case is because there was, under Seeley, a first filed case. And Wood says, you can't amend, you have to start again. But if you start again, why should you be barred by the – by a public disclosure that occurred after you filed your own case? When we filed our case, there was no disclosure of this fraud. Our client disclosed the fraud in his complaint. As it happened, there was an underwood under Seeley. But there was no public disclosure when he filed his case. I reserve the balance of my time, Your Honor. Thank you. Yes, thank you. You've got a couple of minutes for rebuttal. Mr. Mosier? Thank you, Your Honor. May it please the Court. As the Court acknowledged, we think that the statutory text of the public disclosure bar makes clear that the two prior lawsuits, both the underwood lawsuit and the Omni-One suit, was public disclosure. But before I get into the statutory text, I want to point the Court's attention to the New York medical decision, where the party there, the New York Medical College, made a similar argument. The prior disclosure was a complaint filed in state court by the relator. In the second case, the relator said that because it was the one that filed the complaint, it should qualify as an original source. And what the Court said is it has to look to the elements of the original source exception to see whether or not the relator qualifies as an original source. There's no general rule that just because you filed the first complaint, it's not a public disclosure, or that you automatically qualify as an original source. We're going to follow the statutory text. If you satisfy any of the elements for an original source, you can be an original source. But simply by virtue of filing the earlier complaint, it doesn't render that complaint not a public disclosure, and it doesn't mean you're automatically an original source. The Court has numerous decisions recognizing that allegations in a publicly filed complaint, any filing on a public docket, counts as a public disclosure under the public disclosure bar. That goes back to the Court's decisions in Doe v. John Doe Corp. and the Kreinler decision. All that the statute requires to trigger the public disclosure bar is that the allegations are in the public domain, that they get in the public domain through one of the avenues specified in the statute, and that the allegations in the pending case are substantially the same as the allegations that have been publicly disclosed. So under this Court's prior decisions, the prior complaints, once they were unsealed, became public disclosures, and Omni has never disputed that the allegations in this case are substantially similar to the prior complaints. That's enough to establish that the public disclosure bar is met. Then you can turn to the original source. You know, a lot of the policy reasons that we've heard of why this would be a bad rule, and somebody who had their own information should be allowed to proceed, Congress chose to address those policy concerns by adding the original source exception. So any relator that can satisfy the elements and establish that they are an original source is allowed to proceed. What the argument we've heard here today is an argument for allowing this relator to proceed, even if they cannot establish that they are an original source. And we would submit that Congress wouldn't want that sort of suit to proceed. If you look at the facts of this case, by the time this case, Omni 2, was filed, the government knew of these allegations for eight years. The government had decided not to proceed on those claims. The relator could not establish that he had voluntarily provided the information to the government before the public disclosure. The relator couldn't allege that he had materially added to the information that had already been in the public domain for three years. When all of those factors are present, there's no reason to think that the Congress would have wanted a suit like this to go forward. Can I just ask you on the question of voluntary disclosure, to what, to your mind, constitutes a voluntary disclosure for purposes of this original source rule? Obviously, your position is that the disclosure, pre-filing disclosure, does not qualify. What would qualify as a voluntary disclosure? If you reach out, apart from filing a suit, if you reach out voluntarily to the government, it happens a lot of times, and one clear way to show that you've made a separate disclosure is to reach out to the agency that has allegedly been defrauded. That's what happened in the Hughes Aircraft case out of the Ninth Circuit. In this context here, the Centers for Medicare and Medicaid have a Medicare fraud hotline that you can reach out to and tell Medicare that they're being defrauded, and it's important to know that we aren't saying that relators have to do this. A lot of relators do what the relator did here, and it's a perfectly rational choice, a litigation choice of, like, if you know about fraud, decide, I'm going to hire counsel, draft a complaint, try to race to the courthouse, because I know it's important to be the first to the courthouse, and then in connection with filing that complaint, I'll make the required disclosure under B-2. I'll give the government my information. That's going to increase my odds of being the first to file. The consequence is if you aren't the first to file, you're not going to be able to take advantage of the original source exception. Another choice, and the one that Congress has tried to incentivize relators to do, is that once I learn of a fraud, I'm going to reach out and contact Medicare, tell them, put them on alert, let them investigate. In the meantime, I can start bringing a key tamp suit. The filing, the drafting of the complaint, the preparing of the disclosure statement takes months. There's a period of months, sometimes even into years, between a relator has identified a fraud and when they are ready to file the complaint. If on day one, your lawyer reaches out to CMS and says, hey, we want you to know that there's a fraud here, you should investigate it. In the meantime, we're going to prepare a key tamp suit and bring that. At that point, when you file the suit, you make the required disclosure under C-2. So I mentioned the Hughes Aircraft case. That's what the relator did there. She worked for Hughes Aircraft. She noticed some accounting practices that she thought were questionable. It was as part of a contract with the Department of Defense. She told the Department of Defense that she had questions about the practice. The Department of Defense apparently didn't do anything. The relator filed a key tamp suit and was an original source. In the cause of action case out of the Seventh Circuit, the relator sent a letter to the government and said, we think the Chicago Transit Authority is engaging in fraud. You should investigate them. When the government apparently hadn't investigated them at the speed that the relator would have liked, the relator filed its own key tamp suit and at that time made the B-2 disclosure. That original letter asking the government to do the investigation was sufficient to be the original source. I'm happy to answer any questions that the court has, but we think under the court's precedent, it's clear that this counts as a public disclosure. In the New York Medical College case, the court considered similar arguments. Under the original source doctrine, I guess we can quickly touch on the direct and independent knowledge. The court has a number of published decisions, both Kreinler, also the New York Medical College, and then a couple of recent unpublished decisions, applying this same rule that a relator that just gets information through conversations with a third party doesn't have direct information. Mr. Merger, can I just ask you to address the statute of limitations issue? Yes. Yeah, so we think the statute of limitations would also bar these claims. The relator concedes in its brief that it would need the benefit of equitable tolling. In part, Omni I was filed seven years before Omni II, and the two parts of the limitations period set up by the statute, one has a six-year limitation period. The other is you must bring your claim within three years of when the government knows about it, or ten years at a maximum. So I think that's why we have a concession that you need equitable tolling, and equitable tolling under this court's decisions apply only in extraordinary circumstances. The vast majority of the period that they want tolled is the period in which they were barred from bringing suit under the first-to-file bar. That is a choice that Congress made in creating the first-to-file bar, that it would cause other cases to be out of court, so I don't think that could qualify as the type of extraordinary circumstance that would warrant equitable tolling. It's also extremely rare, and I don't think we've identified a circumstance where a court has kind of adopted a blanket rule that every plaintiff in a certain circumstance would get the benefit of equitable tolling as opposed to sort of unique circumstances of an individual plaintiff. The next period of time after the unsealing is the period in which before the Wood decision, when there was a circuit split on whether you would have to refile the case or not, that uncertainty in the law is not an extraordinary circumstance. The final part of the period is when it was an open question in the relator's mind whether the district court would apply the settled law of the circuit to his complaint, not an extraordinary circumstance. I'd like to touch on a couple other points. We heard at the beginning that the courts often go beyond the text and the statute in figuring out how to deal with different issues, and the example was, you know, whether a complaint had to be dismissed and refiled after the first-to-file bar. That was decided based on the statutory text. There was a statutory in the first-to-file bar the word pending. The court interpreted it to mean that you couldn't have another case while the first one was pending, but once the first one was dismissed, it's no longer pending. The first-to-file bar no longer applies. So that rule wasn't just made up by the court. It was based on statutory text of pending. Can I ask you, in terms of the Underwood case and or the Omni-1, there are portions of it the government did intervene, correct? As to both plaintiff's claims? No. As to some defendants or no? So in the Omni-1 case, that case was originally brought against Amerisourceburg, and it was then later amended to Admikeson and U.S. Oncology. The government intervened as to Amerisourceburg and unsettled that portion of the case. It never declined to intervene against Admikeson and U.S. Oncology. Just the last word, I guess I'm out of time, but quickly on Beauchamp. That was a situation where it was one case, an original complaint, an amended complaint. The Second Circuit said for purposes of applying first-to-file bar, public disclosure, we would look at the first complaint that had the relevant allegations. In Wood, this Court, I mean, the issue in Wood, this fight between can you just stay a case and file an amended complaint, or do you need to refile? Everyone understood that mattered because of issues like this. If you file a new case, there's statute of limitations issues. There are other issues. So for those reasons, we would ask the Court to affirm the district court's decision. Thank you. Thank you. Your Honors, with regard to public disclosure in New York Medical, New York Medical is one of three cases that my adversary cited, none of which are this situation. There are cases that say that where a relator files a public case, settles it. For example, one of the cases, the plaintiff settled a state case, then brought a ketamine case. The Court said you made a public disclosure. You made the decision to file a case. You're bound by that. No case involves a situation. As Judge Gershon acknowledged, there's no case on record that says where someone has to dismiss because of a first filed case that their own complaint is a public disclosure. With regard to voluntary, Your Honor, you asked my adversary the question. I don't think he answered it. Judge Gershon's decision is, in essence, that whenever you make a disclosure before you file the case, by definition, it cannot be voluntary. I don't know, regardless of whether or not that is an accurate characterization of what the judge was saying, more broadly, just what is the rule that you're asking us to apply? Like, do you not think that a separate disclosure, aside from the pre-filing disclosure, is required? Well, no. I don't think a separate disclosure is required. In this case, there were several disclosures. There were several discussions. There was written. There was oral discussion. Neither the court below nor my adversary explains, how can you make a disclosure? In order to be an original source, you have to make a disclosure pre-2010 before you file, post-2010 before the public disclosure. Judge Gershon says there is no voluntary disclosure because, under the statute, you have to make a disclosure when you file. So, therefore, if you make a disclosure before you file to become an original source, by definition, it is a mandatory disclosure because the statute says you have to disclose. I don't know if I agree with your characterization of what's being said there. But as I said, even if we reject the idea, because the way you're framing it is to suggest that no one could ever be an original source. I don't think that's what the judge was suggesting. But even if that were the case, certainly there has to be something else, doesn't there? I mean, if being an original source is to have meaning and making a voluntary disclosure is to have meaning, but everyone who files one of these actions has to make a disclosure, there's no limiting principle there. Doesn't there have to be something beyond, yes, I did well, you know, before I filed the suit, I made the required formal disclosures, and, therefore, that counts. No. You have the voluntary, you have to disclose the basic elements of your case, which was done here. And it has to, take the post-2010 rule, for example. You have to make your disclosure, you have to make your voluntary disclosure before there's a public disclosure. In other words, in other words, you determine whether you're original source based upon, I told the government before it was publicly known. That's the test, that's one of the tests under 2010. What has to be incorporated in the public disclosure? I think the case law is pretty clear on that. You have to give the basic underlying facts sufficient to advise the government of a claim. Here, there was like a 10-page voluntary disclosure. It was both written and oral. There were several meetings. Clearly, he made the voluntary disclosure before the public disclosure. He made the voluntary disclosure in 2012. There was no, it's conceded there was no public disclosure in 2012. And what, again, what is the reason why we are relying on the dismissed suit instead of the 2019 suit, which is what is at issue in this case? I'm not, well, in terms of voluntary disclosure, I'm not relying on it. I'm saying in 2012, he made a public disclosure. I'm sorry, he made a voluntary disclosure. Whether you count the 2012 case or not, it is a fact that he made a disclosure, a voluntary disclosure before there was any public disclosure. Under the post-2010 rule, if you make a disclosure before a public disclosure, you are original source. There's no dispute he did that. Is that the only test for original source? You know, I'm sure Underwood would say, no, we were first. No. Because we filed two years before 2012. They filed 2010, but it was not a public disclosure. 2010, right. It was not a public disclosure. It was under seal. So, well, your client's complaint was under seal as well, right? In 2012? So how is that different? I'm sorry. On voluntary disclosure and public disclosure are different things. Totally different. And it seems like you are. No, I'm not. He made, in 2012, he made a voluntary disclosure to the government. That's undisputed. In writing and orally. There was no public disclosure in 2012. Underwood was filed under seal in 2010. The case law is very clear that a sealed filing is not a public disclosure. There was no public disclosure until 2016. He made a voluntary disclosure. Well, the complaint was unsealed, right, public disclosure. But in terms of voluntary disclosure, Underwood, you're not disputing that they made a voluntary disclosure? I don't know. That's not relevant. But if your definition of a voluntary disclosure is the filing of the complaint under seal, then Underwood filed their complaint on May 28, 2010. Well, I'm not saying that. But also, it's not relevant under the statute whether someone else made a voluntary disclosure. Well, isn't that the whole point of who's the original source? Because more than one person can say, I went to the government first. I disclosed the fraud first. Not public disclosure, but voluntary disclosure. I'm the original source. There's nothing in the statute that says you have to be the first one to make a voluntary disclosure. The statute says you are an original source. When you talk about the statute, again, it comes back to what's the point of labeling someone an original source. If it doesn't really mean you're the original source, it just means you're one of potentially many people who voluntarily disclosed something. There could be more than one original source. The statute says the original source is something. There are two avenues in the post-2010. I obviously don't have time to get to the pre-2010. But in the post-2010 statute, the one avenue is you made a voluntary disclosure before there was a public disclosure. There's no dispute that he did that. There's no dispute. He made a voluntary disclosure. And it's irrelevant whether Underwood or 80 other people made voluntary disclosures. Our client made a voluntary disclosure in 2012. There was no public disclosure until 2016. But just as Judge Lee is saying, if we accept your premise, then there is no such thing as original source, because anybody who may have no public disclosure has an inkling, sends a letter to the government, the government receives 15 letters, in essence, alleging some of the same conduct. Are you saying there could be 15 relators? No, because under the first filed rule, the first filed person is the one who has the case. The other people do not have a case unless the first filed case is dismissed. There's a very clear scheme under the statute. The statute does not say you can be the sole source. So then the first filed complaint relator could recover, even though there may be a different relator who was the original source. Is that what you're saying? The first filed relator, if there is a rule. The first relator, forget the facts of this case, the first person in the courthouse filing the complaint recovers, even though they may not have been the original source to the government. Is that what you're saying? That's absolutely true. You don't have to be an original source. You don't get to original source unless there's a public disclosure. If there's a public disclosure, then you can still proceed if you are original source. If this Court concludes that my client's 2000, his own case that he filed in 2000, I'm sorry, that his own case was a public disclosure, if this Court concludes that, then you go to the next step, which is, does he meet the test for original source? Unequivocally, he does. That's what I was trying to get you to answer my question in your original argument. How is the original source? Because if he makes a voluntary disclosure before there is public disclosure under the 2010 statute, he is an original source. He did that. He made a, there was no public disclosure when he made his voluntary disclosure in 2010. So the court, the trial court was wrong in finding that he's not the original source because none of his information came directly from him? No, that's not, well, that's a separate ground. On voluntary, the Court said, yes, you made a disclosure in 2012, but it wasn't voluntary. It wasn't voluntary because the statute says you have to make a disclosure before you, you have to make a disclosure. I'm interested in the second ground, whether or not he had the information firsthand. Yes. Well, that's a separate ground under the pre-2010 direct and independent. We say that he was both direct and independent. He was independent because he got all the information himself. He didn't get it from Underwood. He did his own research. He interviewed several doctors who were involved with the company. And he determined, based on his own investigation, and we say under the Kennard, the Cooper, and the Banigan cases, that is direct and independent. Now, the P. N. Santilli case, which is not a binding precedent, said, in effect, you have to be either the perpetrator or standing next to the perpetrator and be an eyewitness to the fraud. That's, in effect, what P. N. Santilli says. I think, I don't know if I agree with that characterization, but if you can wrap up. Yes. I'm going to let you go over. In conclusion, Your Honors, we think that there was no public disclosure. We think he's an original source. And we also believe that there should be equitable tolling because that was the implication of this Court's decision in Woods when it said you could refile. And the Court said, we won't decide today whether there should be equitable tolling. But the Court indicated that, in effect, that that should be considered since you had to refile based upon our decision. Thank you, Your Honors. All right. Thank you both. We'll take the case under advisement.